**UNITED STATES DISTRICT COURT          EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:12-CR-80 (1) |
| | § | |
| ELIZABETH ANN HARDIN | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Elizabeth Ann Hardin's ("Hardin") *pro se* Motion for Compassionate Release or a Sentence Reduction (#56) pursuant to 18 U.S.C. § 3582(c)(1)(A). The Government filed a Response (#60) in opposition. Hardin filed a Reply (#62) as well as a Motion for Evidentiary Hearing (#63), Motion for Mold/Asbestos Survey at her Expense (#64), and Motion for Subpoena of Special Master Wendy Still (#65). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends the court deny Hardin's motion. Having considered the pending motions, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that Hardin's Motion for Compassionate Release or a Sentence Reduction (#56), Motion for Evidentiary Hearing (#63), Motion for Mold/Asbestos Survey at her Expense (#64), and Motion for Subpoena of Special Master Wendy Still (#65) are without merit.

I.      Background

On July 11, 2012, a federal grand jury for the Eastern District of Texas, Beaumont Division, returned a single-count Indictment, charging Hardin in Count One with Bank Robbery by Force or Violence, in violation of 18 U.S.C. § 2113(a). On September 12, 2012, Hardin pleaded guilty to Count One of the Indictment. On March 5, 2013, the Honorable Ron Clark, a United States District Judge for the Eastern District of Texas, sentenced Hardin to 100 months'

imprisonment, to be followed by three years of supervised release.  Hardin is currently housed at Federal Medical Center Carswell ("FMC Carswell"), located in Fort Worth, Texas.  Hardin's projected release date is November 18, 2029.

## II.    Analysis

### A.    Appointment of Attorney for Post-Conviction Proceedings

In the pending motion, Hardin cursorily asks the court to appoint counsel to assist her in filing a motion for a sentence modification under 18 U.S.C. § 3582.  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, 586 U.S. 232, 245-46 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Albarran v. White*, No. 24-2758, 2025 WL 1625537, at *1 (9th Cir. June 9, 2025); *United States v. Jones*, No. 24-11675, 2025 WL 733234, at *2 (11th Cir. Mar. 7, 2025); *Pettis v. United States*, 129 F.4th 1057, 1063 (7th Cir. 2025) ("There is no constitutional right to counsel in postconviction proceedings."); *Tong v. Lumpkin*, 90 F.4th 857, 863 n.2 (5th Cir. 2024);  *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017).  Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Garza*, No. 24-40425, 2025 WL 429978, at *1 (5th Cir. Feb. 7, 2025); *United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010). Additionally, courts have recognized that:

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Hardin is not entitled to the appointment of counsel to assist her in seeking compassionate release or a sentence reduction under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*,

55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Hardin provides no basis for the court to conclude that the appointment of counsel would benefit her or the court in addressing her request. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). Moreover, Hardin has failed to raise a potentially viable claim or any factually or legally complex issues that could justify the appointment of post-conviction counsel. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Hardin's request for appointment of counsel is denied.

   B.    Sentence Reduction—Controlling Law

   A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

   (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all

administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission").  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are:

(1) the medical circumstances of the defendant;

(2) the age of the defendant;

(3) the family circumstances of the defendant;

(4) whether the defendant was a victim of abuse while in custody;

(5) other reasons similar in gravity to those previously described; and

(6) an unusually long sentence.

*Id.* § 1B1.13(b)(1)-(6).   The Fifth Circuit has clarified, however, that "prisoners have extraordinary and compelling reasons for relief 'only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Austin*, 125 F.4th at 692 (quoting *Escajeda*, 58 F.4th at 186).

As a result, a prisoner seeking compassionate release on her own motion must satisfy the following hurdles:

    (1)     the defendant must have exhausted her administrative remedies;

    (2)     "extraordinary and compelling reasons" must justify the reduction of her sentence or she must satisfy the requirements of § 3582(c)(1)(A)(ii);

    (3)     the reduction must be consistent with the Commission's applicable policy statements; and

    (4)     the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

    C.    <u>Exhaustion of Administrative Remedies</u>

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.   18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").   The exhaustion requirement applies whether the

motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Harden*, 2025 WL 562716, at *5.

Here, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief. Hardin attached a letter to the pending motion that was addressed to the warden of FMC Carswell. The letter, which was allegedly sent on February 21, 2025, contained a request for compassionate release based on five separate grounds. In her request, Hardin states:

I am requesting compassionate release for the following reasons:

1.      I was sentence[d] to 8 years for my offense, to run concurrent with my state prison term, but I have been denied the intent of the sentencing judge.

2.      I believe my present housing conditions are unconstitutional. I am denied bodily privacy from biological male inmates. . . .

3.    The calculation of the First Step [A]ct credits by the FBOP, has not been properly calculated and applied as President Trump and the Congress intended. . . .

4.    I am 67 years of age. I have served over 10 years in custody. I have health issues which will worsen, based on the inadequate health care in the federal prison system.

5.    There is Toxic mold and friable asbestos in the prison, causing me and other prisoners serious respiratory problems . . . .

The Government, however, maintains that neither the BOP nor FMC Carswell has any record of such letter being sent to or received by the warden. Based on the record before the court, it is unclear whether Hardin actually submitted her request to the warden. Nevertheless, even if Hardin complied with the exhaustion requirement before filing her motion for sentence reduction, nothing in the motion indicates that extraordinary and compelling reasons exist to modify her term of imprisonment.

D.    Criteria for Release

1.    Health and Medical Circumstances

In the pending motion, Hardin contends that she is eligible for a sentence reduction due to the health risks allegedly posed by the conditions of her confinement at FMC Carswell. Regarding a defendant's medical circumstances, § 1B1.13(b)(1) states that extraordinary and compelling reasons exist if the defendant's motion presents the following circumstances:

(A)    The defendant is suffering from a terminal illness (*i.e.,* a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B)    The defendant is—

(i)    suffering from a serious physical or medical condition,

9

       (ii)     suffering from a serious functional or cognitive impairment, or

       (iii)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C)     The defendant is suffering from a medical condition that requires long term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D)     The defendant presents the following circumstances—

       (i)      the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

       (ii)     due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

       (iii)    such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

In the present motion, Hardin admits that she is "not in poor health." Rather, she maintains her health is at risk due to the "dangerous environmental conditions at the prison." Specifically, Hardin asserts that FMC Carswell contains "toxic mold, friable asbestos, and other dangerous chemicals, which are being inhaled by [Hardin] through air ducts." According to Probation, however, the purported conditions at FMC Carswell have not caused Hardin to suffer from any serious medical conditions, necessitated specialized medical care, or diminished her ability to provide self-care in the prison setting.

Additionally, a mere risk to one's health does not, alone, constitute an extraordinary and compelling circumstance. *See United States v. Lewis*, No. 4:20-CR-00100, 2023 WL 300131, at *4 n.4 (E.D. Tex. Jan. 18, 2023) (noting that the presence of mold and asbestos in a facility does not constitute an extraordinary and compelling reason for defendant's early release); *United States v. Garcia*, No. 3:15-CR-0194-B-1, 2021 WL 3269774, at *3 (N.D. Tex. July 30, 2021) (holding that concerns which apply to the prison population as a whole cannot constitute extraordinary and compelling reasons). Additionally, by its essence, a condition that impacts all of the prisoners who are held at a facility is not an extraordinary and compelling circumstance meriting release from prison. *See Garcia*, 2021 WL 3269774, at *3. Here, there is no evidence that Hardin faces an elevated risk as compared to any other individual housed at FMC Carswell. *Id.*; U.S.S.G. § 1B1.13(b)(1)(ii). As a result, Hardin has failed to demonstrate the existence of medical circumstances warranting compassionate release.[2]

### 2.    Age

Hardin appears to contend that she is eligible for compassionate release due to her age.[3] Section 1B1.13(b)(2) clarifies that extraordinary and compelling reasons exist as to a defendant's age when:

---

[2] Because Hardin cannot demonstrate that she faces an individualized and increased risk due to the alleged conditions at FMC Carswell, granting her request to conduct a mold and asbestos survey would be futile with respect to her motion for compassionate release. Accordingly, the court is of the opinion that Hardin's Motion for Mold and Asbestos Survey (#64) should be denied.

[3] Hardin does not explicitly contend that she is eligible for compassionate release due to her age. Rather, she mentions only that she is 67 years of age. In the request she allegedly submitted to the warden, Hardin states "I am 67 years of age. I have served over 10 years in custody. I have health issues which will worsen, based on the inadequate health care in the federal prison system." Accordingly, the court will liberally construe Hardin's motion and address the issue of whether her age constitutes an extraordinary and compelling circumstance warranting compassionate release.

> The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b)(2).

Here, although Hardin is 67 years old, there is no indication that she is experiencing a serious deterioration in her physical or mental health. As noted above, Hardin admits in her motion that she is "not in poor health." Additionally, the Government notes in its Response (#60), that Hardin is "seen regularly by medical staff and [has] no anomalous health concerns, other than prediabetes and hypertension." Hardin provides no evidence that her medical needs are not being met or that FMC Carswell is incapable of fulfilling her medical needs as she continues to age. Moreover, Hardin has not yet served 10 years or 75 percent of her term of imprisonment. She did not commence service of her federal sentence until she was paroled from the Texas Department of Criminal Justice on August 9, 2023. Thus, Hardin has served only 23 months (or 23%) of her 100-month sentence. Accordingly, Hardin's age does not constitute an extraordinary and compelling circumstance justifying compassionate release or a sentence reduction.

### 3.  Sexual Abuse

Hardin contends that she has been a victim of sexual abuse while serving her current term of imprisonment. Namely, Hardin maintains that she is currently being housed with biological males who purportedly identify as female. Hardin notes that she is "forced to shower with these male inmates and share other intimate facilities." Additionally, Hardin maintains that these practices violate her "religious and constitutional rights" and constitute sexual abuse within the meaning of U.S.S.G. § 1B1.13(b)(4). Section 1B1.13(b)(4) provides that extraordinary and compelling reasons exist under any of the following circumstances:

VICTIM OF ABUSE.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A)    sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B)    physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

U.S.S.G. § 1B1.13(b)(4); *see, e.g.*, *United States v. Ancheta*, No. 312CR00015HDMBNW, 2024 WL 1181815, at *4 (D. Nev. Mar. 19, 2024) ("There is nothing in the Guideline to support [defendant's] contention that a correctional officer's failure to act would qualify as conduct committed by or at the direction of the officer.").

As a preliminary matter, Hardin does not maintain that she has suffered sexual abuse at the hands of an individual who had custody and control over her. Even if, however, the alleged abuse could in some way be attributed to the correctional officers at her facility, Hardin has failed to demonstrate that the alleged abuse involved a sexual act. A sexual act, as defined by 18 U.S.C. § 2246(2), requires some form of physical contact. 18 U.S.C. § 2246(2) (requiring a sexual act to include "contact," "penetration," or "intentional touching"). Here, Hardin complains only of perceived "voyeurism" by other inmates. Hardin maintains that she is watched by and forced to share intimate spaces with biological males. Notably, Hardin does not claim to have been subjected to any physical contact, as required under 18 U.S.C. § 2246(2). Moreover, there is no

13

evidence to suggest that the alleged abuse can be established by a criminal conviction, civil admission or finding, or administrative proceeding, as required by § 1B1.13(b)(4). Therefore, Hardin has failed to demonstrate the existence of extraordinary and compelling reasons due to sexual abuse.

### 4.     Miscalculation of Credits

Although unclear, Hardin seemingly asserts that extraordinary and compelling reasons exist to transfer her to a halfway house or home confinement because the BOP has miscalculated certain credits to which she believes she is entitled under the Act. Specifically, Hardin maintains that she has earned over 6 years of credits under the Act. As a result, Hardin contends that she is entitled to a mandatory transfer to a halfway house or home confinement. Thus, she claims the BOP's miscalculation is an extraordinary and compelling circumstance warranting a reduction or modification of sentence.

The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement or transfer to a halfway house. 18 U.S.C. § 3621(b); *United States v. Chaney*, 823 F. App'x 278, 279 (5th Cir. 2020) ("The [BOP] has the sole authority to designate a prisoner's place of incarceration."); *United States v. Dugan*, No. 4:12-CR-00143-004, 2023 WL 3550092, at *7 n.6 (E.D. Tex. May 18, 2023) ("The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement."); *United States v. Alonzo*, 516 F. Supp. 3d 623, 633 n.10 (E.D. Tex. 2021); *see Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 739 (5th Cir. 2020) (holding that "the pandemic did not create judicial authority to grant home confinement"); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020)

("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."). Further, the BOP's decision regarding home confinement or placement in a halfway house is not subject to judicial review. *See* 18 U.S.C. § 3621(b); *Tillman v. Rosalez*, No. A-22-CV-1137-LY-ML, 2023 WL 3741655, at *2 (W.D. Tex. May 4, 2023) ("The BOP's designated place of imprisonment 'is not reviewable by any court.'" (quoting 18 U.S.C. § 3621(b))), *adopted by* No. 1:22-CV-01137-DII-ML, 2023 WL 3741633 (W.D. Tex. May 30, 2023); *United States v. Powell*, No. CR 15-496-4, 2020 WL 2848190, at *2 n.5 (E.D. Pa. June 2, 2020) ("[T]o the extent that [Defendant] seeks to appeal the prison's denial of home confinement, such decision is not reviewable by this Court."). Indeed, it is well established that "[n]o inmate has a constitutional right to be housed in a particular place or any constitutional right to early release." *Cheek*, 835 F. App'x at 740. Because the calculation of credits falls squarely within the authority of the BOP, the court is unable to order home confinement or compassionate release based on this alleged miscalculation.

### 5. Other Reasons

Hardin also advances an additional "extraordinary and compelling" circumstance that does not fit squarely within any of the categories contained in § 1B1.13(b). The current policy statement acknowledges that other reasons not specifically enumerated in the policy statement may provide a basis for compassionate release. *See* U.S.S.G. § 1B1.13(b)(5).

> (5)    Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(b)(5). Hardin maintains that extraordinary and compelling circumstances warrant the imposition of a sentence reduction because the sentencing judge intended for the

federal sentence to be imposed concurrently along with any state sentence imposed. Relevant to Hardin's request is that, approximately a week before she committed the offense of conviction, Hardin robbed a woman in Orange County, Texas. Additionally, at the time Hardin committed the offense of conviction, she was on state parole for forgery. Then, while awaiting her state sentencing hearing, she attempted to escape from the Liberty County Jail. Due to Hardin's conduct, she received state sentences in addition to her federal sentence. Hardin maintains that the judgment in her federal case instructs that the sentence shall run concurrently with any other sentence imposed. Accordingly, Hardin claims that she is entitled to a sentence reduction because she served well over 100 months in state prison.

Hardin's misconception regarding her federal sentence, however, has already been adequately addressed multiple times by this court. On May 11, 2020, Hardin filed a Motion to Lift Detainer (#45), asking the court to release the federal detainer against her because her federal sentence was allegedly ordered to run concurrently with her state sentence. On May 27, 2020, the court issued a Memorandum and Order (#46) denying Hardin's motion. Subsequently, Hardin submitted a Motion (#51) to the court on June 12, 2024. Hardin's motion asked the court to correct the Judgment and Commitment Order to cure purported inadvertence in the record. The motion stated that, during her sentencing hearing, the court pronounced that her federal sentence would run concurrently with any yet-to-be imposed state sentence for alleged relevant conduct. The Presentence Investigation Report ("PSR") reveals, however, that Hardin's state offenses were not considered relevant conduct to her federal offense of conviction and were not deemed so by Judge Clark, as set forth in the transcript of the sentencing hearing. Again, Hardin's motion was denied by a Memorandum and Order issued on July 8, 2024 (#53), which contains a detailed

account of Hardin's sentencing hearing and a thorough explanation as to why her sentences were to run consecutively. Specifically, at the sentencing hearing, Judge Clark stated "I am not going to state that these sentences will run concurrent." The Judgment of Conviction (#41) is silent on this issue, and Hardin provides no evidence that the state court expressed any opinion or issued any order to the contrary. At the BOP's request, this court sent a letter dated November 4, 2024, to the BOP Computation Center, reaffirming that Hardin's federal sentence was to be served consecutively to her state sentences pursuant to U.S.S.G. § 5G1.3(d), noting that her state sentences did not involve conduct relevant to her federal conviction for bank roberry. Consequently, the court does not find it necessary to address the issue yet again. Therefore, Hardin has failed to demonstrate the existence of extraordinary and compelling circumstances warranting a sentence reduction based on any assertion about the sentencing judge's intent.

    E.   <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Section 3553(a)(1) requires the court to consider the nature and circumstances of the defendant's offense of conviction as well as the history and characteristics of the defendant. 18

U.S.C. § 3553(a)(1). Here, neither the nature of Hardin's offense nor her history and characteristics warrant a sentence reduction.

Hardin's offense of conviction entails her participation in a bank robbery by force or violence. Specifically, on June 21, 2012, Hardin walked into the Capital One Bank located on 5th Street in Orange, Texas. Hardin approached the bank teller with a note demanding money but quickly took it away before the teller could read it. Hardin then ordered the teller to give her all of the one-hundred and fifty-dollar bills at the teller's station. Hardin instructed the teller not to "say anything or turn your head." Hardin stated that there were two men waiting in the drive-through watching the teller to make sure she complied. The teller did not have any fifty-dollar bills, but she gave Hardin all of the one-hundred and twenty-dollar bills in her possession. As Hardin was leaving, she instructed the teller to wait twenty minutes before calling anyone. Hardin left the bank with $4,140.00.

The same day, an individual came forward and spoke with local law enforcement regarding the incident that took place at the Capital One Bank. The man stated that he had heard that Hardin had been involved in several robberies. Additionally, he noted that Hardin previously told him that she was hiding from her husband because he was going to hurt her. Because he believed Hardin, the man rented a motel room for her. After hearing about the robbery, the man was concerned about being seen as a participant in the incident. As a result, he advised law enforcement of the name of the motel as well as Hardin's room number. Officers attempted to enter the hotel room after obtaining the man's consent, but Hardin placed a chair underneath the door handle to bar the officers from entering her room. The officers ultimately entered the room by force and arrested Hardin without further incident.

18

During an interview with law enforcement, Hardin admitted to robbing Capital One as well as several other stores located throughout Orange and Beaumont, Texas. Hardin claimed that a man named "Jerry" threatened to harm her family if she did not commit the robberies. Hardin further asserted that "Jerry" gave her a portion of the money she obtained during the robberies, which she used to purchase crack cocaine. At the time of the incident, Hardin admitted that she had been using crack cocaine for six months and was spending $300.00 per day to support the habit. Additionally, at the time of sentencing, Hardin received a two-point adjustment for obstruction of justice. Hardin received the adjustment due to her attempted escape of the Liberty County Jail. Although Hardin claims that she was attempting to commit suicide, the investigating authorities determined, based on her statements to medical personnel and other inmates as well as letters found on her person when she fled, that Hardin intended to flee and seek revenge against her husband. On December 12, 2012, authorities recovered $900.00 of the cash taken from the bank, which was found in packages she expelled from her rectum, where she had stored the money. Hardin admitted that she planned to use the cash to escape from the prison in Fort Worth, where she was sent for evaluation.

Moreover, Hardin's PSR reflects that she amassed a criminal history score of seventeen points, four points above the thirteen criminal history points needed to reach the highest criminal history category of VI. In fact, at sentencing, Judge Clark commented "this is one of the longest criminal histories I've seen for a woman in all my time on the bench . . . just page after page." He continued—"it is just an endless history of forgeries, theft by checks, burglaries, more forgeries, and so forth." A review of the PSR indicates that Hardin has been convicted of Forgery seven times, Theft (including Felony Theft) six times, and Theft by Check four times. Hardin was

also convicted once of Burglary of a Habitation.  Additionally, at the time of Hardin's sentencing, she faced pending charges for Theft by Check committed on March 15, 2012, Felony Forgery committed on May 7, 2012, Felony Forgery committed on May 11, 2012, Robbery committed on June 12, 2012, and another Robbery committed on June 14, 2012.  Hardin was on parole for forgery when she committed her offense of conviction.  In short, Hardin's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).  Nonetheless, Judge Clark sentenced Hardin to 100 months of imprisonment, the bottom of the applicable sentencing guideline, as opposed to 125 months, at the top of the guideline range, which was more in line with her criminal history.

Further, Hardin has a long history of poly-substance abuse, including the use of alcohol, marijuana, cocaine, and "crack" cocaine.  Additionally, Hardin's PSR indicates that she admitted to using the money obtained from the robberies she committed to support her addiction.  She was disgnosed with Cocaine Dependence with Physiological Dependence when evaluated prior to sentencing.  Courts are precluded from "lengthening a prison term in order to promote a criminal defendant's rehabilitation," but in the present case, the court is deciding whether to reduce, not extend, a sentence.  *Tapia v. United States*, 564 U.S. 319, 321 (2011); *see Chambliss*, 948 F.3d at 694.  In this instance, releasing Hardin at this juncture could facilitate her drug abuse, as she would gain unfettered access to illegal drugs and alcohol outside the BOP.

In addition, granting Hardin compassionate release would fail to provide just punishment for her offense and promote respect for the law, as required by § 3553(a)(2)(A).  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that

the defendant's terminal illness "constitute[d] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* at 694; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022). In the case at bar, releasing Hardin after she has served only 23 months (or approximately 23%) of her 100-month sentence would similarly minimize the impact of her crime and the seriousness of her offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

Additionally, Hardin has provided no evidence supporting the existence of sentencing disparities within the meaning of § 3553(a)(6). Section 3553(a)(6) requires the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Courts have recognized that § 3553(a)(6) requires the comparative defendant to be "similarly situated." *United States v. Boukamp*, 105 F.4th 717, 738 (5th Cir. 2024). Moreover, courts must evaluate the existence of any aggravating or mitigating factors that may distinguish an individual case. *United States v.*

*Lerma*, 123 F. 4th 768, 773 (5th Cir. 2024). Therefore, if the court determines that defendants are similarly situated, it must then evaluate whether a sentencing disparity is warranted. *Id.*

In the present case, Hardin has failed to identify a similarly situated defendant. Hardin first mentions Elizabeth Holmes ("Holmes"), whom she contends was the "lead fraudster" in an unrelated case. Hardin contends that Holmes received an eleven-year sentence (actually 135 months), despite causing losses exceeding $500 million and harming patients with her "fake blood testing machine." As a preliminary matter, Holmes received a longer sentence than Hardin, commensurate with the crime she committed. Nevertheless, the circumstances surrounding Hardin and Holmes's cases are vastly different. Specifically, Hardin had an extensive criminal history and committed robbery by force or violence, whereas Holmes had no criminal history and was convicted of conspiracy to commit wire fraud and three counts of fraud. Accordingly, Hardin and Holmes's sentences, much like their crimes, are different, but not disparate. Thus, the court cannot conclude that Holmes is similarly situated to Hardin within the meaning of § 3553(a)(6).

Alternatively, Hardin contends that her sentence is disparate because the average federal sentence imposed for a murder offense is approximately twenty-two years. First, the statistic that Hardin cites is irrelevant because it concerns a crime completely different in nature than Hardin's offense of conviction. Consequently, the court cannot infer the existence of a disparity, as the offenses and their corresponding sentences are not remotely comparable. Moreover, even if the court were to consider the cited statistic, the Fifth Circuit has routinely recognized that national sentencing statistics are generally irrelevant under § 3553(a)(6). *Lerma*, 123 F. 4th at 773; *Boukamp*, 105 F.4th at 738; *United States v. Robinson*, 67 F.4th 742, 753 (5th Cir. 2023). The rationale being that "national sentencing averages 'disregard individual circumstances and only

reflect a broad grouping of sentences imposed on a broad grouping of criminal defendants; consequently, they are basically meaningless in considering whether a disparity with respect to a particular defendant is warranted or unwarranted.'" *Boukamp*, 105 F.4th at 738 (quoting *United States v. Willingham*, 497 F.3d 541, 544-45 (5th Cir. 2007). Therefore, Hardin has failed to demonstrate the existence of an unwarranted sentencing disparity for purposes of § 3553(a)(6).

Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal"). Like the court in *United States v. Lewis*, this court concludes that "Defendant's current term of imprisonment was and remains appropriate." No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).

On balance, compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).

23

Here, Hardin's track record is abysmal.  In this instance, there is no reason to believe that Hardin would not resume engaging in criminal activity, including offenses such as robbery that involve violence, if released from prison at this time.  *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021).  Hardin committed a serious offense that justified her sentence, and the circumstances she now identifies do not render that sentence unjust or inequitable.  *See id*. Therefore, in view of the nature and circumstances of her offense of conviction, her extensive criminal history, and her long history of substance abuse, the court cannot conclude that Hardin's early release from prison would afford adequate deterrence or protect the public.

III.    Conclusion

In sum, Hardin has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The 100-month sentence of imprisonment imposed upon Hardin for her offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and she has adduced no extraordinary and compelling reasons to lessen her sentence or justify her release from prison at this time.  Furthermore, Hardin is cautioned to refrain from filing future motions for compassionate release unless she is able to show a significant deterioration in her medical condition, the completion of a substantially greater portion of her sentence, and sufficient documentary evidence of the exhaustion of her administrative remedies.

Accordingly, Hardin's *pro se* Motion for Compassionate Release or a Sentence Reduction (#56), Motion for Evidentiary Hearing (#63), Motion for Mold/Asbestos Survey (#64), and Motion for Subpoena of Special Master Wendy Still (#65) are DENIED.

SIGNED at Beaumont, Texas, this 11th day of August, 2025.

_Marcia A. Crone_

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE